DORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                  :

       - v. -                           :      SEALED INDICTMENT

VIKTOR BOUT,                              :      S1 09 Cr. 1002
     a/k/a "Boris,"
     a/k/a "Victor Anatoliyevich Bout," :
     a/k/a "Victor But,"
     a/k/a "Viktor Budd,"               :
     a/k/a "Viktor Butt,"
     a/k/a "Viktor Bulakin,"            :
     a/k/a "Vadim Markovich Aminov,"
RICHARD AMMAR CHICHAKLI,                  :
     a/k/a "Robert Cunning,"
     a/k/a "Raman Cedorov,"             :

            Defendants.               :

- - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/3/09

## COUNT ONE

### CONSPIRACY TO VIOLATE THE
### INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT

     The Grand Jury charges:

### BACKGROUND

### *The Defendants*

     1.   Since at least in or about 1996, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant, has operated a network of air cargo companies based in countries in the Middle East, Africa, Eastern Europe and the United States. In addition, since at least 1996, BOUT has controlled a large private fleet of Soviet-era cargo aircraft.  Shortly after the

breakup of the Soviet Union, BOUT was able to acquire surplus or obsolete airplanes which he used to deliver arms and ammunition. In large part because of his extensive network of aircraft and operations companies, between 1996 and 2008, BOUT had the capacity to transport large-scale military machinery, as well as extensive stores of weapons to virtually any location in the world.  According to the United Nations and the Department of the Treasury, for example, the arms BOUT has sold or brokered have helped fuel conflicts and support regimes in Afghanistan, Angola, the Democratic Republic of the Congo, Liberia, Rwanda, Sierra Leone and Sudan.

       2.   One of the principal, and earliest, companies in the network owned and operated by VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant, was Air Cess, which was registered in Liberia with BOUT as its chief officer.  Other businesses in the BOUT network include Centrafrican Airlines, San Air General Trading, Air Bas, Air Pass, Abidjan Freight, Air Zory, Bukavu Aviation Transport, Business Air Services, Gambia New Millennium Air Company, CET Aviation, Irbis Air Company, Moldtransavia SRL, Odessa Air, Transavia Network, and Santa Cruz Imperial.  As reported by the United Nations, of these companies, San Air General Trading and Centrafrican Airlines played a key

role in supplying arms to the regime of former President Charles
Taylor of Liberia and the Sierra Leone rebel group, the
Revolutionary United Front ("RUF").  A United Nations committee
and the Department of the Treasury determined that in exchange
for these supplies, BOUT received payment from Liberia's
international ship registry as well as diamonds and other
valuable commodities acquired illegally by Taylor's associates
and the RUF.

        3.    Since at least in or about 1996, RICHARD AMMAR
CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the
defendant, a United States citizen, has been a close associate of
VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout,"
a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt,"
a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the
defendant, assisting in the operations and financial management
of BOUT's network of companies.  As of 2005, CHICHAKLI's resume
described his extensive management and coordination of activities
for Air Cess, Air Bas, and Centrafrican Airlines, as well as the
fact that he served as the Chief Financial Officer for several
companies controlled by BOUT.

        *United Nations Sanctions Against the Defendants for*
        *Supporting Armed Conflicts in Africa*

        4.    Since at least 2000, VIKTOR BOUT, a/k/a "Boris,"
a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a
"Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a

"Vadim Markovich Aminov," the defendant, has been identified by
the United Nations as being responsible for arming a number of
international conflicts, and playing a critical role particularly
in those areas where the weapons trade has been embargoed by the
United Nations.  According to United Nations reporting, BOUT
operated through a web of different companies, some of which were
run by his former employees and associates, obscuring his
involvement in their operations, and also registered his aircraft
in countries that allowed him to circumvent international
regulations on air cargo -- flying his planes under so-called
"flags of convenience."  For example, a United Nations report on
the conflicts in Angola over diamond-mining territory, published
in December of 2000, included this observation: "Landing heavy
cargo planes with illicit cargoes in war conditions and breaking
international embargoes such as the one on Angola requires more
than individual effort.  It takes an internationally organized
network of individuals, well funded, well connected and well
versed in brokering and logistics, with the ability to move
illicit cargo around the world without raising the suspicions of
the law or with the ability to deal with obstacles.  One
organization, headed, or at least to all appearances outwardly
controlled by an Eastern European, Victor Bout, is such an
organization."  This United Nations report also addressed the
close relationship between BOUT and RICHARD AMMAR CHICHAKLI,

a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendant,
noting, "[o]ver the last decade, Mr. Chichakli has held senior
positions in companies owned by Victor Bout. ... As chief
financial manager, his responsibilities include directing the
accounting, financial and reporting activities, including public
reporting, auditing and overall responsibility for the financial
systems."

5.   Beginning in 2001, the United Nations Security
Council adopted a series of resolutions aimed at addressing the
growing conflict in Liberia.  Starting with resolution 1343,
which was unanimously adopted on March 7, 2001, the Security
Council required all United Nations member states to take
necessary measures "to prevent the sale or supply to Liberia, by
their nationals or from their territories or using their flag
vessels or aircraft, of arms and related materiel of all types,
including weapons and ammunition, military vehicles and
equipment, paramilitary equipment and spare parts ... whether or
not originating in their territories."  Between 2001 and 2004,
the Security Council adopted 11 additional resolutions, which in
relevant part expressed concern about the growing conflict in
Liberia and the support for rebel groups in Liberia and
neighboring countries, and further recognized the role in fueling
these conflicts that was played by the illicit diamond and arms
trades.  During the same time period, the United Nations Security

5

Council also adopted similar resolutions aimed at addressing similar conflicts in other African states, including Angola, Sierra Leone, the Sudan, and the Democratic Republic of the Congo. As set forth in greater detail below, recognizing the role played by VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant, and his network of companies in fueling the conflict in Liberia, as well as other conflicts in Africa, these resolutions in part attempted to limit BOUT's abilities to conduct business and to travel.

6.    On December 22, 2003, the United Nations Security Council unanimously adopted resolution 1521, which recognized "the linkage between the illegal exploitation of natural resources such as diamonds and timber, illicit trade in such resources, and the proliferation and trafficking of illegal arms as a major source of fuelling and exacerbating conflicts in West Africa, particularly in Liberia," and which authorized the formation of a committee, consisting of all the members of the Security Council, to undertake certain tasks. Among these tasks was the designation of individuals who would be subject to resolution 1521's travel ban. As part of resolution 1521, the Security Council decided that all United Nations member states "shall take the necessary measures to prevent the entry into or

transit through their territories of all such individuals, as designated by the Committee, who constitute a threat to the peace process in Liberia, or who are engaged in activities aimed at undermining peace and stability in the subregion, including those senior members of former President Charles Taylor's Government and their spouses and members of Liberia's former armed forces who retain links to former President Charles Taylor, ... and any other individuals, or individuals associated with entities, providing financial or military support to armed rebel groups in Liberia or in countries in the region." In 2003, the member nations of the Security Council were Angola, Bulgaria, Cameroon, Chile, China, France, Germany, Guinea, Mexico, Pakistan, the Russian Federation, Spain, the Syrian Arab Republic, the United Kingdom and the United States.

7. On March 12, 2004, the United Nations Security Council unanimously adopted resolution 1532, which in part directed all United Nations member states to freeze all funds, financial resources and other economic assets of former Liberian President Charles Taylor, his immediate family members and other close allies or associates as designated by a United Nations Security Council Committee that had previously been established for this purpose. In 2004, the member nations of the Security Council were Algeria, Angola, Benin, Brazil, Chile, China,

France, Germany, Pakistan, Philippines, Romania, the Russian Federation, Spain, the United Kingdom and the United States.

8.   On March 16, 2004, the United Nations Security Council Committee, pursuant to United Nations resolution 1521, approved a list of individuals subject to the travel restrictions imposed by that resolution.  Both VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, were among those individuals included on the travel ban list promulgated by the United Nations Security Council at that time. The Security Council Committee explained the reason for BOUT's designation as follows: "Businessman, dealer and transporter of weapons and minerals.  Arms dealer in contravention of [United Nations Security Council] resolution 1343.  Supported former President Taylor's regime in effort to destabilize Sierra Leone and gain illicit access to diamonds."  The United Nations Security Council Committee described the rationale for CHICHAKLI's designation as follows: "[Chichakli] has been an employee/associate of Viktor Bout for about a decade.  The UN identified Chichakli as Viktor Bout's Chief Financial Manager and, therefore, as one who acts at Bout's direction.  His own resume details his senior positions with several Bout-controlled

companies.  A certified public accountant and certified fraud examiner with more than 12 years of experience, [Chichakli] plays a significant role in assisting Bout in setting up and managing a number of his key firms and moving money (both for acquisition of assets and reparation of profits).... Chichakli is an officer of San Air General Trading.  Payments for many of the weapons that went to Liberia through Victor Bout's network in 2000 and 2001 were directed to San Air's bank accounts.  As such, Chichakli is associated with an entity providing financial or military support to armed rebel groups in Liberia or in countries in the region."

9.    Shortly thereafter, on June 14, 2004, the United Nations Security Council Committee also placed VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, on the asset freeze list that had been established as part of resolution 1532.  As a result of their placement on the asset freeze list, all United Nations member states were directed to freeze any funds, financial assets and economic resources owned or controlled directly or indirectly by BOUT and CHICHAKLI, and to ensure that such monies would not be made available to them, or used for their benefit, within the member states' territories. Several companies owned, managed or affiliated with BOUT and

CHICHAKLI were also placed on the asset freeze list, including
Air Cess, Air Zory, Airbas, ATC Ltd., Bukavu Aviation Transport,
Business Air Services, Centrafrican Airlines, Central Africa
Development Fund, CET Aviation Enterprise, Chichakli &
Associates, PLLC, Continue Professional Education, Inc., Daytona
Pools, Inc., DHH Enterprises, Inc., Gambia New Millennium Air
Company, IB of America Holdings, Inc., Irbis Air Company,
Moldtransavia SRL, Odessa Air, Orient Star Corporation, Richard
A. Chichakli, P.C., San Air General Trading FZE, Santa Cruz
Imperial Airlines, Southbound, Ltd., Trans Aviation Global Group,
Inc., Transavia Network, Vial Company and Westbound, Ltd.

### United States Sanctions Against the Defendants for Supporting Armed Conflicts in Africa

10.    The International Emergency Economic Powers Act,
Sections 1701 to 1706 of Title 50 of the United States Code
("IEEPA"), grants to the President of the United States a broad
spectrum of powers necessary to "deal with any unusual and
extraordinary threat, which has its source in whole or
substantial part outside the United States, to the national
security, foreign policy, or economy of the United States, if the
President declares a national emergency with respect to such
threat."  Title 50, United States Code, Section 1701(a).

11.    Pursuant to IEEPA, the President of the United
States is authorized, among other things, to "investigate,
regulate, or prohibit -- (i) any transactions in foreign

exchange, (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of a foreign country or any national thereof, [and] (iii) the importing and exporting of currency or securities." 50 U.S.C. § 1702(a)(1)(A). The President exercises these IEEPA powers through Executive Orders that impose economic sanctions to address particular emergencies, and delegate IEEPA powers for the administration of those sanctions programs.

12. In addition to articulating a particular threat, by Executive Order the President may also designate specific individuals and entities who constitute and/or contribute to the threat, and set forth standards for identifying more such individuals and entities. The President delegates the task of determining who meets these standards to an agency in the Executive Branch, usually the Department of the Treasury. Those "designated" individuals who are determined to fit the standards are subject to the Executive Order's economic sanctions.

13. The Department of the Treasury's Office of Foreign Assets Control ("OFAC") is the office principally responsible for administering United States economic sanctions programs. These programs are primarily directed against foreign states and nationals, including sponsors of global terrorism and foreign narcotics traffickers, to implement United States foreign policy

and national security goals.  Pursuant to authority delegated by the President to the Secretary of the Treasury, OFAC acts under Presidential wartime and peacetime national emergency powers. OFAC also acts under authority granted by specific legislation to impose controls on transactions and to freeze, or "block," certain foreign property and interests in property within the United States or in the possession or control of United States persons.  The property and property interests blocked by OFAC pursuant to an Executive Order may not be transferred, withdrawn, exported, paid, or otherwise dealt in by United States persons or in the United States without OFAC's prior authorization.

14.  On July 22, 2004, the President of the United States, pursuant to the authority granted by, among other things, IEEPA, signed Executive Order 13348, entitled "Blocking Property of Certain Persons and Prohibiting the Importation of Certain Goods From Liberia."  Consistent with the steps taken by the United Nations, described above, Executive Order 13348 found, among other things, that "the actions and policies of former Liberian President Charles Taylor and other persons, in particular their unlawful depletion of Liberian resources and their removal from Liberia and secreting of Liberian funds and property, have undermined Liberia's transition to democracy and the orderly development of its political, administrative, and economic institutions and resources."  The Executive Order

further found that "the Comprehensive Peace Agreement signed on
August 18, 2003, and the related ceasefire have not yet been
universally implemented throughout Liberia, and that the illicit
trade in round logs and timber products is linked to the
proliferation of and trafficking in illegal arms, which
perpetuate the Liberian conflict and fuel and exacerbate other
conflicts throughout West Africa."  The President determined that
these circumstances in Liberia "constitute[d] an unusual and
extraordinary threat to the foreign policy of the United States"
and accordingly declared a "national emergency to deal with that
threat."  The national emergency and the sanctions set forth in
the Order became effective on July 23, 2004, and they remain in
effect today.

          15.  Among other things, Executive Order 13348
prohibited any transaction or dealing by a United States person
or within the United States in "all property and interests in
property of [certain listed or designated persons]," and any
transaction by a United States person or within the United States
"that evades or avoids, has the purpose of evading or avoiding,
or attempts to violate any of the prohibitions set forth in this
order."  The Order prohibited transactions, by United States
persons or within the United States, in the property and
interests in property of those foreign individuals and entities
listed in the Annex to the Order, as well as those persons and

13

entities later determined and designated by the Secretary of the
Treasury, in consultation with the Secretary of State: "(A) to be
or have been an immediate family member of Charles Taylor; (B) to
have been a senior official of the former Liberian regime headed
by Charles Taylor or otherwise to have been a close ally or
associate of Charles Taylor or the former Liberian regime; (C) to
have materially assisted, sponsored, or provided financial,
material, or technological support for, or goods or services in
support of, the unlawful depletion of Liberian resources, the
removal of Liberian resources from that country, and the
secreting of Liberian funds and property by any person whose
property and interests in property are blocked pursuant to this
order; or (D) to be owned or controlled by, or acting or
purporting to act for or on behalf of, directly or indirectly,
any person whose property and interests in property are blocked
pursuant to this order."

     16.  Pursuant to IEEPA and Executive Order 13348, those
individuals and entities found to have the affiliations described
above were to be listed on the Specially Designated Nationals and
Blocked Persons List (the "SDN List"), a listing maintained by
the Treasury Department which contains the names of those
individuals and entities whose financial transactions are to be
blocked because of specified Executive Orders signed pursuant to
IEEPA.

17.   Among the 28 individuals identified by the
President in the Annex to Executive Order 13348 as subject to the
Order's prohibitions was VIKTOR BOUT, a/k/a "Boris," a/k/a
"Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor
Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim
Markovich Aminov," the defendant, who was described in the Annex
as a "[b]usinessman, dealer and transporter of weapons and
minerals."

18.   On April 26, 2005, RICHARD AMMAR CHICHAKLI, a/k/a
"Robert Cunning," a/k/a "Raman Cedorov," the defendant, was
designated by the Department of the Treasury, through OFAC, as a
person to whom the prohibitions and sanctions of Executive Order
13348 applied, primarily because of CHICHAKLI's close affiliation
with BOUT and his network of companies, and specifically because
of CHICHAKLI's role as "BOUT's U.S.-based chief financial
officer."  Also at that time, OFAC designated several aviation
and other companies affiliated with BOUT, including Air Cess,
Centrafican Airlines, San Air General Trading, Air Bas, CET
Aviation, Irbis, Transavia Travel and Santa Cruz Imperial.  In a
press release issued in connection with these new designations,
the Department of the Treasury identified BOUT as "an
international arms dealer and war profiteer," who "runs a network
of air cargo companies" and "controls what is reputed to be the
largest private fleet of Soviet-era cargo aircraft in the world."

According to the Department of the Treasury "[t]he arms [BOUT] has sold or brokered has [sic] helped fuel conflicts and support UN sanctioned regimes in Afghanistan, Angola, the Democratic Republic of the Congo, Liberia, Rwanda, Sierra Leone and Sudan."

19.   On October 27, 2006, the President of the United States, pursuant to his IEEPA powers, signed Executive Order 13413, entitled "Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of the Congo."   Through Executive Order 13413, the President declared a national emergency with respect to the situation in the Democratic Republic of the Congo, "which has been marked by widespread violence and atrocities that continue to threaten regional stability."   Similar to Executive Order 13348 relating to Liberia, Executive Order 13413 prohibited transactions in the United States in all property and interests in property of certain Specially Designated Nationals.   One of the individuals listed in the Annex to the Order as being subject to its restrictions was VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant.

20.   Pursuant to IEEPA and Executive Orders 13348 and 13413, the Department of the Treasury, through OFAC, promulgated regulations.   With respect to Executive Order 13348, those

regulations were titled "Former Liberian Regime of Charles Taylor
Sanctions Regulations."  Title 31, Code of Federal Regulations,
Part 593.  With respect to Executive Order 13413, those
regulations were titled "Democratic Republic of the Congo
Sanctions Regulations."  Title 31, Code of Federal Regulations,
Part 547.  Among other things, these regulations provide that:

   a. With certain exceptions, "property and
interests in property [of Specially Designated Nationals and
Blocked Persons] that are in the United States, that hereafter
come within the United States, or that are or hereafter come
within the possession or control of U.S. persons, including their
overseas branches, [ ] are blocked and may not be transferred,
paid, exported, withdrawn, or otherwise dealt in."  Title 31,
Code of Federal Regulations, Section 593.201(a); Title 31, Code
of Federal Regulations, Section 547.201(a).

   b. "[A]ny transaction by any U.S. person or
within the United States . . . that evades or avoids, has the
purpose of evading or avoiding, or attempts to violate any of the
prohibitions set forth in this part is prohibited."  Title 31,
Code of Federal Regulations, Section 593.206(a).  "[A]ny
conspiracy formed to violate the prohibitions set forth in this
part is prohibited."  Title 31, Code of Federal Regulations,
Section 593.206(b); Title 31, Code of Federal Regulations,
Section 547.205(b).

21.  Pursuant to Section 206 of IEEPA, Title 50, United States Code, Section 1705, a willful violation of "any license, order, or regulation" issued under IEEPA is a crime.

<u>THE CONSPIRACY TO EVADE OFAC SANCTIONS AND VIOLATE IEEPA</u>

22.  From at least in or about June 2007, up to and including in or about December 2007, in the Southern District of New York and elsewhere, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Sections 1701 to 1706 of Title 50, United States Code.

23.  It was an object of the conspiracy that VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did conduct financial transactions for the purpose of, and which had the effect of, violating, and which facilitated the violation of, the prohibitions set forth in

18

Executive Order 13348 and the regulations issued under the Order and under the International Emergency Economic Powers Act, including the "Former Liberian Regime of Charles Taylor Sanctions Regulations," Title 31, Code of Federal Regulations, Part 593, in violation of Sections 1701 to 1706 of Title 50, United States Code.

<u>MEANS AND METHODS OF THE CONSPIRACY</u>

24.   The United Nations and OFAC sanctions described above, imposed beginning in early 2004, exposed much of the network of companies owned and operated by VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant, and made it difficult for both BOUT and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendant, to do business within their existing corporate structure.  Accordingly, BOUT and CHICHAKLI took steps to form new aviation and other companies, and took specific steps to register these companies in the names of other individuals, and otherwise to create the false appearance that BOUT and CHICHAKLI had no affiliation with these new companies.

25.   In or about 2004, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a

"Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a
"Robert Cunning," a/k/a "Raman Cedorov," the defendants, created
and registered Samar Airlines, which purported to be a commercial
airline and a passenger and cargo aircraft charter service, based
in the Republic of Tajikistan.  At all relevant times, Samar
Airlines was owned, controlled and operated by BOUT and
CHICHAKLI; however, their names deliberately were not used in
certain public documents and filings related to the company.
Instead, although BOUT and CHICHAKLI were personally involved in
the operational and business affairs and decisions of Samar
Airlines,  other individuals were expressly held out to the
public as being the officers of the company.

       26.  Starting at least in or about the summer of 2007,
VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout,"
a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt,"
a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and
RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman
Cedorov," the defendants, took steps to purchase airplanes on
behalf of Samar Airlines.  Specifically, starting in or about
July of 2007, Samar Airlines contracted with an aviation company
located in Florida (the "Aviation Company") for technical
assistance in connection with the purchase of at least two
aircraft – a Boeing 727-200 and a Boeing 737-200.  Samar Airlines
also contracted with a second company located in Florida (the

"Aircraft Services Company"), for the ferrying of the purchased aircraft, and the provision of crews for that purpose, from the United States to Tajikistan.

27.   In connection with the purchase of these aircraft and services relating thereto, in excess of $1.7 million was electronically transferred into bank accounts located in the United States, on behalf of Samar Airlines, from overseas bank accounts in the names of other companies.  These payments were made on behalf of Samar Airlines from the bank accounts of front companies which were also owned and controlled by VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov," the defendant.  These front companies were established, and these payments were made through their accounts, in order to protect BOUT's assets and to evade the OFAC sanctions applicable to BOUT, RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendant, and several companies identified as being owned or controlled by them.

28.   Following the wire transfers described above, OFAC became aware of RICHARD AMMAR CHICHAKLI's, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendant, affiliation with Samar Airlines and its purchase of aircraft, technical assistance, and aircraft ferrying services from the Aviation

21

Company and the Aircraft Services Company.  Accordingly, in or about September of 2007, OFAC blocked the funds that had been transferred, on behalf of Samar Airlines, into the United States bank accounts of the Aviation Company and the Aircraft Services Company.

29.  From in or about September 2007 through at least in or about December 2007, in correspondence with United States regulators and authorities, specifically OFAC and the United States Ambassador to Tajikistan, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, through Samar Airlines and its public representatives, made numerous misrepresentations about the ownership of Samar Airlines, and the involvement, or lack thereof, of CHICHAKLI in the operations and business affairs of Samar Airlines, in an effort to persuade OFAC to unblock the blocked funds.

<u>OVERT ACTS</u>

30.  In furtherance of the conspiracy and to effect the illegal object thereof, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert

Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, committed the following overt acts in the Southern District of New York and elsewhere:

a.    On or about July 12, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $339,977.35 from a bank account located in Cyprus and affiliated with the company Wartrex Holdings Limited, which funds were owned and controlled by BOUT, through a bank located in New York, New York, into the account of the Aviation Company, in connection with the purchase of an aircraft from the Aviation Company.

b.    On or about July 12, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $52,800.00 from a bank account located in the Republic of Kazakhstan and affiliated with the company Aviakompaniya Mega, which funds were owned and controlled by BOUT, through a bank located in Salt Lake City, Utah, into the account of the Aviation Company, in connection with the purchase of an aircraft from the Aviation Company.

c.    On or about July 13, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $54,785.00 from a bank account located in the Republic of Kazakhstan and affiliated with the company Aviakompaniya Mega, which funds were owned and controlled by BOUT, through a bank located in Salt Lake City, Utah, into the account of the Aviation

23

Company, in connection with the purchase of an aircraft from the Aviation Company.

d.    On or about July 23, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $52,544.00 from a bank account located in the Republic of Kazakhstan and affiliated with the company Aviakompaniya Mega, which funds were owned and controlled by BOUT, through a bank located in New York, New York, into the account of the Aviation Company, in connection with the purchase of an aircraft from the Aviation Company.

e.    On or about July 30, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $252,000.00 from a bank account located in Russia and affiliated with the company Ilex Ventures Ltd., a company owned and controlled by BOUT, through a bank located in New York, New York, into the account of the Aviation Company, in connection with the purchase of an aircraft from the Aviation Company.

f.    On or about August 1, 2007, BOUT and CHICHAKLI, on behalf of Samar Airlines, transferred approximately $244,200.00 from a bank account located in Russia and affiliated with the company Ilex Ventures, Ltd., a company owned and controlled by BOUT, through a bank located in New York, New York, into the account of the Aviation Company, in connection with the purchase of an aircraft from the Aviation Company.

24

g.    On or about August 13, 2007, BOUT and
CHICHAKLI, on behalf of Samar Airlines, transferred approximately
$204,000.00 from a bank account located in Russia and affiliated
with the company Ilex Ventures, Ltd., a company owned and
controlled by BOUT, through a bank located in New York, New York,
into the account of the Aviation Company, in connection with the
purchase of an aircraft from the Aviation Company.

h.    On or about August 23, 2007, BOUT and
CHICHAKLI, on behalf of Samar Airlines, transferred approximately
$99,030.00 from a bank account located in the Republic of
Kazakhstan and affiliated with the company Aviakompaniya Mega,
which funds were owned and controlled by BOUT, through a bank
located in Salt Lake City, Utah, into the account of the Aviation
Company, in connection with the purchase of an aircraft from the
Aviation Company.

i.    On or about September 5, 2007, BOUT and
CHICHAKLI, on behalf of Samar Airlines, transferred approximately
$297,500.00 from a bank account located in Cyprus and affiliated
with the company Trinipac Enterprises Limited, which funds were
owned and controlled by BOUT, through a bank located in New York,
New York, into the account of the Aviation Company, in connection
with the purchase of an aircraft from the Aviation Company.

j.    On or about September 14, 2007, a letter sent
to the United States Ambassador to Tajikistan, purporting to come

25

from the public Director of Samar Airlines, falsely stated, in relevant part, that CHICHAKLI "is not an owner, shareholder, or an employee of the company, nor does he have any interest in our company. ... His relation to the company is no more than consultant/broker to facilitate the purchase of aircraft."

   k. On or about December 10, 2007, a letter sent to OFAC, purporting to come from the public Director of Samar Airlines, falsely stated, in sum and substance, that CHICHAKLI's only role with respect to Samar Airlines was to introduce that company to another company for purposes of acquiring aircraft.

   (Title 50, United States Code, Section 1705;
   Title 18, United States Code, Section 371.)

### COUNT TWO

#### THE MONEY LAUNDERING CONSPIRACY

   31. The allegations set forth in Count One are incorporated by reference herein as if set forth here in full.

   32. From at least in or about June 2007, up to and including in or about December 2007, in the Southern District of New York and elsewhere, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine,

conspire, confederate, and agree together and with each other to violate Section 1956 of Title 18, United States Code.

33.   It was a part and an object of the conspiracy that VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did transport, transmit and transfer, and attempt to transport, transmit and transfer monetary instruments and funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, BOUT and CHICHAKLI electronically transferred funds from bank accounts outside the United States, into bank accounts in the United States, for the purpose of, and which transfers had the effect of, evading and avoiding, and facilitating the evasion and avoidance of, the prohibitions set forth in Executive Order 13348 and the regulations issued under the Order and under IEEPA, including the "Former Liberian Regime of Charles Taylor Sanctions Regulations," Title 31, Code of Federal Regulations, Part 593, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

OVERT ACTS

34.   In furtherance of the conspiracy and to effect the illegal object thereof, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, committed the overt acts described in paragraph 30 above, and incorporated by reference herein as if set forth here in full.

(Title 18, United States Code, Section 1956(h).)

**COUNT THREE**

THE WIRE FRAUD CONSPIRACY

35.   The allegations set forth in Counts One and Two are incorporated by reference herein as if set forth here in full.

36.   From at least in or about June 2007, up to and including in or about December 2007, in the Southern District of New York and elsewhere, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine,

conspire, confederate, and agree together and with each other to violate Section 1343 of Title 18, United States Code.

37.   It was a part and an object of the conspiracy that VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, to wit, a scheme in which BOUT and CHICHAKLI entered into a transaction with a United States aviation company (the "Aviation Company"), in an attempt to procure airplanes with the assistance of the Aviation Company, in contravention of the IEEPA and OFAC sanctions imposed against them, by concealing the true nature of their involvement in the transaction from both the Aviation Company and United States regulators, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, BOUT and CHICHAKLI, acting through a series of front companies, transferred more than $1.7 million, from outside the United

29

States into the United States, through banks located in the
Southern District of New York and elsewhere, in violation of
Title 18, United States Code, Section 1343.

<u>OVERT ACTS</u>

38.   In furtherance of the conspiracy and to effect the
illegal object thereof, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor
Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd,"
a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim
Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert
Cunning," a/k/a "Raman Cedorov," the defendants, and others known
and unknown, committed the overt acts described in paragraph 30
above, and incorporated by reference herein as if set forth here
in full.

(Title 18, United States Code, Section 1349.)

**COUNTS FOUR THROUGH NINE**

<u>WIRE FRAUD</u>

39.   From at least in or about June 2007, up to and
including in or about December 2007, in the Southern District of
New York and elsewhere, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor
Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd,"
a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim
Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert
Cunning," a/k/a "Raman Cedorov," the defendants, unlawfully,
willfully and knowingly, having devised and intending to devise a

30

scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations and promises, to wit, a scheme in which BOUT and
CHICHAKLI entered into a transaction with a United States
aviation company (the "Aviation Company"), in an attempt to
procure airplanes with the assistance of the Aviation Company, in
contravention of the IEEPA and OFAC sanctions imposed against
them, by concealing the true nature of their involvement in the
transaction from both the Aviation Company and United States
regulators, did transmit and cause to be transmitted by means of
wire, radio, and television communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds,
for the purpose of executing such scheme and artifice, to wit, on
the dates set forth below, BOUT and CHICHAKLI, acting through a
series of front companies, made the electronic funds transfers
described in the table below, which transfers were cleared
through banks located in New York, New York, to bank accounts in
the name of the Aviation Company:

| Count | Wire | Amount | Date |
|-------|------|--------|------|
| 4 | Wire transfer 071207285600 | $339,977.35 | 7/12/07 |
| 5 | Wire transfer 070723014575 | $52,544.00 | 7/23/07 |
| 6 | Wire transfer 0730366149009237 | $252,000.00 | 7/30/07 |
| 7 | Wire transfer 0708018078300 | $244,200.00 | 8/1/07 |
| 8 | Wire transfer 0813332954008876 | $204,000.00 | 8/13/07 |
| 9 | Wire transfer 9227100248FS | $297,500.00 | 9/5/07 |

(Title 18, United States Code, Sections 1343 and 2.)

### FIRST FORFEITURE ALLEGATION

40.   As the result of committing the IEEPA offense in violation of Title 50, United States Code, Sections 1701 to 1706, alleged in Count One of this Indictment, and the wire fraud offenses in violation of Title 18, United States Code, Sections 1343 and 1349, alleged in counts Three through Nine of this Indictment, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a "Robert Cunning," a/k/a "Raman Cedorov," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to the following:

a.   At least $1,732,756.00 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense.

b.   All funds and other property on deposit in account number 2000033075123, held in the name of RP Aviation Inc. at Wachovia Bank, that constitute or are derived from proceeds traceable to the offense alleged in Count One, and all property traceable thereto.

32

c.    All funds and other property on deposit in account number 0717213717, held in the name of Insured Aircraft Title Services at the International Bank of Commerce, that constitute or are derived from proceeds traceable to the offense alleged in Count One, and all property traceable thereto.

d.    All funds and other property on deposit in account number 00419223, held in the name of Aviation Refinancing Transaction LLC at Deutsche Bank, that constitute or are derived from proceeds traceable to the offense alleged in Count One, and all property traceable thereto.

e.    All funds and other property on deposit in account number 0004503334, held in the name of Aventura Aviation LLC at Israel Discount Bank of New York, that constitute or are derived from proceeds traceable to the offense alleged in Count One, and all property traceable thereto.

f.    All funds and other property on deposit in account number 0004503326, held in the name of Aventura Aviation LLC at Israel Discount Bank of New York, that constitute or are derived from proceeds traceable to the offense alleged in Count One, and all property traceable thereto.

<u>Substitute Assets Provision</u>

41.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

33

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

     (Title 18, United States Code, Section 981;
     Title 21, United States Code, Section 853; and
     Title 28, United States Code, Section 2461.)

## SECOND FORFEITURE ALLEGATION

    42.  As the result of committing the money laundering offense in violation of Title 18, United States Code, Section 1956, alleged in Count Two of this Indictment, VIKTOR BOUT, a/k/a "Boris," a/k/a "Victor Anatoliyevich Bout," a/k/a "Victor But," a/k/a "Viktor Budd," a/k/a "Viktor Butt," a/k/a "Viktor Bulakin," a/k/a "Vadim Markovich Aminov" and RICHARD AMMAR CHICHAKLI, a/k/a

"Robert Cunning," a/k/a "Raman Cedorov," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982, all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to the following:

a.    At least $1,732,756.00 in United States currency, in that such sum in aggregate is property which was involved in the money laundering offense or is traceable to such property.

b.    All funds and other property on deposit in account number 2000033075123, held in the name of RP Aviation Inc. at Wachovia Bank, involved in the offense alleged in Count Two, and all property traceable to such property.

c.    All funds and other property on deposit in account number 0717213717, held in the name of Insured Aircraft Title Services at the International Bank of Commerce, involved in the offense alleged in Count Two, and all property traceable to such property.

d.    All funds and other property on deposit in account number 00419223, held in the name of Aviation Refinancing Transaction LLC at Deutsche Bank, involved in the offense alleged in Count Two, and all property traceable to such property.

e.    All funds and other property on deposit in account number 0004503334, held in the name of Aventura Aviation

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

     (Title 18, United States Code, Section 982.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

VIKTOR BOUT,
a/k/a "Boris,
a/k/a "Victor Anatoliyevich Bout,"
a/k/a "Victor But,"
a/k/a "Viktor Budd,"
a/k/a "Viktor Butt,"
a/k/a "Viktor Bulakin,"
a/k/a "Vadim Markovich Aminov," and
RICHARD AMMAR CHICHAKLI,
a/k/a "Robert Cunning,"
a/k/a "Raman Cedorov,"

Defendants.

INDICTMENT

S1 09 Cr. 1002

(Title 18, United States Code,
Sections 371, 1343, 1349, 1956(h) and 2;
Title 50, United States Code, Section
1705.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.