# Mitchell Dinnerstein

**From:** CHICHALKI RICHARD AMMAR (92036054)

**Sent Date:** Wednesday, November 12, 2014 11:20 AM

**To:** md@dinnersteinlaw.com

**Subject:** Sentencing supplement

Hon. William Pauley, III
U.S. District Judge - SDNY
500 Pearl Street
New York, NY 10007

                  Subject: Government's Changes to PSR / Applicable Sentencing Guidelines
                  Reference:  PSR PM67504 M/F; Case# 09-CRI-1002 (WHP)

Hon. Judge Pauley

    On November 10, 2014 I was forwarded a copy of the the updated PSR and which included serious changes by the prosecutor from the initial report.   The final PSR ALSO CONTAINED SEVERAL NEW ENTRIES CREATED BY THE PROSECUTOR WHICH ARE CONTRADICTORY TO TRIAL RECORDS; thus, FALSE and UNSUPPORTED.

    Because the impact of the new prosecutorial inventions could severely effect sentencing, and the possible appeal of this matter before the United States Court of Appeal for the Second Circuit and beyond, it is essential that the records reflect the Defendant's protest to and disagreement with the newly manufactured prosecutorial entries, that are enumerated in the following:

A- NEW GUIDELINES RANGE PROPOSED BY THE PROSECUTOR ON A FALSE

   GROUND OF NEWLY MANUFACTURED AND IMPOSSIBLE "POTENTIAL LOSS"

  The PSR's entry #31 included a newly manufactured theory by the prosecutor.  The new theory alleges that Aventura which incurred no-loss in connection with the transaction as specifically stated by its owner Henry Gayer, could incur a "Potential loss" of $1.7 million if the transaction was completed.

The prosecutor's flawed creation increases the offense level to (33); approximately 380% over the actual offense level of (7).   The newly manufactured theory of "potential loss" is false on principle, by operation and ALL interpretation of the law, and on the basis of mere common sense, for the following reasons.

## Mitchell Dinnerstein

A potential loss by definition is "a possible, probable, or foreseeable loss." Thus; in order for a loss to be realized the party incurring the loss must deploy an initial investment, AND THAT IS NEITHER APPLICABLE NOR LOGICALLY OR MATERIALLY POSSIBLE IN THE MATTER OF AVENTURA.

FIRST, a correction to the $1.7 million figure which has been used by the prosecutor must be noted. Aventura DID NOT RECEIVE $1.7 million from Samar Airlines. The actual amount Aventura received in its account in connection with this transaction is $1.5 million and which detailed enumeration is listed in the indictment. Thus the statement provided by the prosecutor in the PSR at #17 is incorrect.

The amount sent to RP Aviation is completely separate from that which was sent to Aventura. RP Aviation and Aventura are two different, separate, and unrelated companies, and the payment to RP Aviation was never part of the payment directed to Aventura's account nor related to brokerage role played by Aventura.
IN-FACT the amount sent to RP AVIATION WAS NEVER WITHIN THE JURISDICTION OF THIS COURT.

SECOND, and regardless the amount, the Prosecutor's statement that there is a "POSSIBLE LOSS" Aventura could have suffered if the transaction was completed and OFAC then froze the transaction is FLAWED IN PRINCIPLES, MERIT, and ALL MATERIAL ASPECTS.
Aventura NEVER HAD ANY FINANCIAL RESOURCES VESTED IN THE TRANSACTION NOR HAD ANY OUTLAY OF ITS OWN CASH, not a single dollar.

The prosecution ADMITS (PSR' at #17) that the two aircrafts identified for purchase by Samar Airlines cost the total of $1.3 Million. AVENTURA RECEIVED IN ITS ACCOUNT - IN ADVANCE TO STARTING THE TRANSACTION - FROM SAMAR AIR THE TOTAL OF $1.5 Million (PSR #20). These are irrefutable facts.
The amount stated herein, intended to cover the cost of purchasing the Aircraft, plus the cost of the preparation of the aircraft to fly (Activation); thus, leaving Aventura with ZERO EXPOSURE TO ANY POTENTIAL LOSS. The so-called intended loss DOES NOT AND IS IMPOSSIBLE TO EXIST.
THUS;
WHETHER THE TRANSACTION WAS COMPLETED OR NOT; AVENTURA CANNOT HAVE THE ALLEGED POTENTIAL LOSS OF $1.7 MILLION. WHETHER OFAC BLOCK THE MONEY BEFORE HAND, OR AFTER THE TRANSACTION WAS COMPLETED, OR DURING TRANSACTING OFAC WOULD HAVE BEEN BLOCKING THE CASH OF SAMAR AIRLINES, OR THE AIRCRAFT WHICH WERE PURCHASED BY

## Mitchell Dinnerstein

THE CASH THAT WAS TRANSMITTED BY SAMAR AIRLINES. AVENTURA POTENTIAL LOSS IS ZERO.

AVENTURA IS A BROKERAGE FIRM, IT DOES NOT OWN THE SUBJECT AIRCRAFT, AVENTURA DOES NOT PROVIDE AIRCRAFT ACTIVATION OR TECHNICAL SUPPORT SERVICES, NOR IT IS A LICENSED FAA SERVICE PROVIDER. AVENTURA'S ROLE IS PURELY BROKERAGE, a role which is similar to that of a real estate agent involved in a sale of property. Aventura will use the pre-paid money it received from Samar Airline to pay for the purchase and the activation of aircraft; thus, AVENTURA HAS NEVER HAD THE POSSIBLE LOSS which is invented by the prosecutor.

FURTHERMORE; contractually, legally, on business principles, and even just under Common Sense Aventura CAN NEVER INCUR ANY ACTUAL NOR "POSSIBLE LOSSES." On legal basis:

1- The transaction was fully PRE-PAID, that is Samar Airlines sent IN ADVANCE the entire amounts required for the acquisition and preparation of the aircraft to Aventura, and for the transportation of the aircraft to RP Aviation. PRIOR TO THE ACTUAL COMMENCEMENT OF THE TRANSACTION, THUS; THIS IS A PRE-PAID TRANSACTION AND IT WAS PREPAID IN FULL - IN ADVANCE.

2 - Aventura's role was limited to act as a processor, a buyer's agent whose duty is to ensure that the transaction is processed in accordance to the specification dictated in advance by the principal which is Samar Airlines. The prosecutor ADMITTED AND CONCEDED THAT Aventura's role was ONLY AN AGENT - NOT PRINCIPAL (PSR at#18).
The prosecutor own statement "GAYER AND BLATTNER ACTED AS INTERMEDIARIES" AFFIRMS that AVENTURA WAS ONLY AN AGENT. BY-LAW AN AGENT CANNOT SUFFER THE FINANCIAL LOSS OF ITS PRINCIPAL.

3- In its capacity as an Agent, the TITLE OF THE GOODS, here the Aircraft, WILL NEVER PASS AND NEVER BE VESTED IN AVENTURA. Thus; aventura cannot suffer a loss of assets it never owned and did not pay for.
In fact, as the government showed at trial, Aventura was forwarded in advance the name of the entities which are to receive the title of the aircraft.
THUS; Aventura COULD NOT INCUR ANY POTENTIAL LOSS

4- Financially, IT IS FURTHER IMPOSSIBLE FOR AVENTURA TO INCUR A LOSS WHETHER THE

# Mitchell Dinnerstein

TRANSACTION WAS FROZEN OR NOT.

Aventura DID NOT PROVIDE ANY OUTLAY OF MONEY TO PURCHASE THE AIRCRAFT, As the trial and the evidence provided by the government revealed (See: Government Exhibit: 3503-T), Aventura used the cash that was provided by Samar Airlines to buy the Aircraft, AND SIMILARLY would have use the cash provided by Samar Airline for preparation expenses.

THUS; WHETHER OFAC HAD FROZEN THE CASH (as it did)  PRIOR OR AFTER THE COMPLETION
OF THE PURCHASE, AVENTURA'S POTENTIAL LOSS WILL NOT BE GREATER THAN ZERO BECAUSE
ALL COSTS WERE PREPAID IN ADVANCE.

The goods are purchased with money paid by Samar Airlines in advance; Aventura never vested any monies into the transaction.  Thus; the innovative and desperate scenario now being invented by the prosecutor to manufacture a "Possible loss" to Aventura is impossible to materialize regardless of when and what OFAC freezes.

## B- FALSE ASSERTIONS IN CONTRADICTION OF THE TRIAL RECORDS

At PSR #17, the prosecution alleges that "Mega Air is a company managed by Sergey Bout"; a repeated FALSE ASSERTION CONTRARY TO TRIAL RECORDS, GOVERNMENT OWN EVIDENCE AND GOVERNMENT WITNESSES' TESTIMONY.

Government Exhibit  3513-E page #27 states clearly that "NO LINK BETWEEN BOUT AND MEGA AIR", the testimony of government Witness Albert Monica, affirms the same lack of connection.
At trial NO EVIDENCE WAS PROVIDED, NOR THE ALLEGED CONNECTION BETWEEN MEGA AIR AND SERGEY BOUT WAS NOT ESTABLISHED NOR TRIED, NOR PART ON THE INDICTMENT.

THUS; this newly manufactured prosecutorial falsehood concerning Mega Air is not supported by records.


At PSR #19, the prosecutor reasserted his subornation of the irrefutable perjured testimony of Henry Gayer concerning Gayer's prior knowledge of Chichakli's SDN designation.
The government own evidence (see Government Exhibit 3503-O at #19) clearly state that Gayer admitted to Federal Agent to have been told by Chichakli about the SDN designation and OFAC blocking PRIOR TO THE COMMENCEMENT OF THE TRANSACTION.    Thus; this is noted for the records.

## Mitchell Dinnerstein

AT PSR #27, the prosecutor restates the false assertion made in the previous PSR that "Chichakli and Bout submitted several communications to the U.S. Ambassador in Tajikistan." This is an irrefutable false.

At trial it was not established that either Chichakli or Bout had communicated with the U.S. Ambassador, nor was it established that they have delivered any communication. In-FACT it was the owner and the General manager of Samar Airlines; Valy-Jon Babayev and Alexy Demurov who had met with the U.S. Ambassador. The government withheld this evidence and claimed that the U.S. State Department has no evidence related to this case. It is for the records that the government assertions are FALSE AND UNSUPPORTED.

AT PSR page 26, paragraph: 2, Line: 2 the prosecutor stated:
" ... Chichakli as an SDN was prohibited from engaging in transactions with U.S. citizens at home or abroad."
THIS IS A FALSE ASSERTION CONTRADICTORY TO THE RECORDS.  The record reflects that the prosecutor's statements are contrary to the testimony of Molly Miller who testified on behalf of OFAC.

At trial, Miller testified that OFAC's sanctions PROHIBIT CHICHAKLI FROM TRANSACTING ANYWHERE IN THE WORLD, WITH ANY PERSON REGARDLESS IF A U.S. CITIZEN OR FOREIGNER. (See trial Transcripts  P:91 L:16; P:92 L:23; and P:93 L: 12).
THUS; the prosecutor statement is noted as false contrary to the records.

Finally, the revised PSR changed "VIKTOR BOUT" from a co-defendant with charges pending, to a "related Cases.   THIS IS INCORRECT; thus, it is noted for the records that:
THE CASE IN WHICH MR. BOUT WAS CHARGED AND TRIED IN THE U.S IS NEITHER RELATED, NOR CONNECTED TO THIS CASE  - THERE IS NO RELATION BETWEEN THE TWO CASES WHATSOEVER. It is further noted, that Viktor Bout is neither charged nor indicted in the instant case as of Nov/10/2009.

Dated: Nov 12, 2014
Brooklyn, NY

Respectfully Submitted

Richard Chichakli (Pro-Se)
Defendant

**Mitchell Dinnerstein**